**Affirmed as modified; Opinion Filed June 27, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00697-CR

### JAMES EDWARD HIGHTOWER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause No. F-16-75485-J**

## MEMORANDUM OPINION
Before Justices Lang, Myers, and Stoddart
Opinion by Justice Stoddart

A jury convicted James Edward Hightower of murdering Joshua Harewood and sentenced him to sixty-five years' confinement. In four issues, appellant contends the evidence is insufficient to reject his claims of self-defense and defense of property, the evidence is insufficient to establish that he had the required mental state[1], and the trial court's judgment incorrectly reflects his pleas to the enhancement paragraphs. We modify the trial court's judgment and affirm as modified.

---

[1] The trial court instructed the jury on murder and the lesser-included offense of manslaughter. Appellant contends, if he is guilty, he is guilty only of manslaughter.

**FACTUAL BACKGROUND**

Three people were present when Joshua Harewood was shot: Harewood, appellant, and his girlfriend, Nicoll Hallam. Hallam and appellant testified at trial and presented different accounts of the events leading to Harewood's death.

Hallam and appellant were in a non-exclusive romantic relationship. They lived in a small trailer behind the home of Norman Kettle, the owner of the trailer, for approximately six months.

Around 1:00 a.m. on March 23, 2016, Hallam asked Harewood to take her to the store. When she returned to the trailer with Harewood, he remained in his car while she went to ask appellant's permission for Harewood to come inside. After appellant allowed them in, Harewood and appellant smoked a "blunt" and methamphetamine.

The men continued smoking until Harewood, appearing to feel nervous and uncomfortable, expressed a desire to leave. Hallam testified she stood up to open the door for him while appellant remained seated on a futon. As Hallam opened the door, she heard appellant yell "door" in a "demonic" voice. Harewood then screamed: "Ya'll, no," and shoved Hallam through the door. Hallam testified she heard a gunshot as Harewood pushed her outside. Hallam heard additional gunshots as she ran toward Kettle's house. While running from the trailer, Hallam yelled, "Why are you doing this?" believing appellant was shooting at her. Hallam stated she did not see Harewood with a weapon at any time that day, including while he was in the trailer.

Kettle testified he heard five gunshots in rapid succession from behind his home. He heard Hallam say, "What'd you do? Quit it. Stop James, Stop." Kettle then heard two more gunshots in front of his house. Joseph Gutierrez, a neighbor, heard three to four gunshots coming from the direction of the trailer as the bullets hit his house. When he went outside to investigate, Gutierrez heard three to four additional gunshots and saw a girl run by screaming, "Please don't." Gutierrez momentarily saw a man with a gun whom he could not identify. Kettle later found Harewood dead

in the trailer. In the trailer, the police found nine 7.62–mm bullet casings, which is a type of ammunition used by the SKS rifle in appellant's possession at the time.

In a letter dated April 5, 2016, appellant wrote to Hallam while in jail awaiting trial. Appellant apologized for the shooting and asked for Hallam's forgiveness. He felt relieved to find she was unharmed. The letter admonished Hallam not to discuss what transpired that night.

Appellant testified in his defense. He was asleep in the trailer when Hallam returned in the early morning hours of March 23, 2016. Appellant unlocked the trailer door to let Hallam inside. After Hallam came in and as appellant was closing the door, Harewood grabbed the door. Hallam told appellant that Harewood wanted to smoke with him. Appellant sat down and Hallam closed the door, but did not lock it. Appellant then got up and locked the door. Appellant sat down and lit a "blunt" to share with Harewood. They then smoked methamphetamine.

Appellant testified that after they smoked, he reclined on the futon with his head on a pillow up against the wall, listening to music on Hallam's phone. Appellant was storing a rifle for a friend. He had the rifle, which he covered with a flannel shirt, behind him. Appellant believed it was worth approximately $1,400. Appellant explained he was "high" when he heard, "get it and go for the door." He saw the flannel shirt move and thought Harewood was stealing the rifle. Appellant yelled "door" and reached for the rifle. As appellant and Harewood struggled to control the rifle, it discharged multiple times. Appellant testified: "I believe I was firing the gun . . . . The weapon went off as I was retrieving it." However, on cross-examination, appellant denied firing three shots into Harewood's body. Appellant threw the rifle down and ran out of the trailer through the open door. Although appellant testified Harewood never displayed a weapon or showed any aggression while they were in the trailer, he believed Hallam and Harewood conspired to steal the rifle.

–3–

The medical examiner concluded Harewood died as a result of three gunshot wounds. Harewood sustained two entrance wounds on his left hip, slightly front to back, and one on the front of his lower abdomen. A tool mark and firearm examiner testified that a bullet entry defect and marking on the front of Harewood's T-shirt indicated the rifle was fired from a distance not greater than twenty-four inches.

The jury was instructed on murder and the lesser-included offense of manslaughter. The charge also included instructions on self-defense and defense of property. The jury found appellant guilty of murder.

## LAW & ANALYSIS

In his first three issues, appellant challenges the legal sufficiency of the evidence to support the jury's verdict and implied finding against his justifications of self-defense and defense of property. When reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Adames*, 353 S.W.3d at 860. Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Adames*, 353 S.W.3d at 860. When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.*; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Each fact need not point

–4–

directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

Proof of a culpable mental state may be shown through the circumstantial evidence surrounding the crime. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (en banc). Culpable mental states can be inferred from any facts tending to show their existence, such as actions, words, conduct of the accused, method of committing the crime, and the nature of the wounds inflicted on the complainant. *Id.* Specific intent to kill may be inferred from the use of a deadly weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). When the evidence shows that a deadly weapon was used in a deadly manner, "the inference is almost conclusive that [the defendant] intended to kill." *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986). A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17(A).

As charged here, a person commits murder if (1) he intentionally or knowingly causes the death of an individual, or (2) he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id.* §§ 19.02(b)(1)–(2). A person acts intentionally or with intent with respect to a result of his conduct when it is a conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

In appellant's third issue, he contends the evidence is insufficient to prove he acted intentionally or knowingly. He asserts the evidence is only sufficient to show he acted recklessly and, thus, could only be guilty of the lesser-included offense of manslaughter. The jury heard conflicting testimony concerning appellant's actions. Hallam heard a gunshot as Harewood was leaving the trailer. Harewood screamed: "Ya'll, no." Kettle heard Hallam say, "What'd you do? Quit it. Stop James, Stop." Harewood died after sustaining three gunshot wounds and the bullet

–5–

casings were the type of ammunition used for the SKS rifle in appellant's possession. Appellant testified he believed that he fired the gun. Appellant acknowledged he later wrote a letter to Hallam apologizing for the shooting and admonishing her not to talk about it.

Although appellant testified he struggled with Harewood for control of the rifle and it went off in his hands, the jury was free to disbelieve this testimony. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Having considered the evidence in the light most favorable to the verdict, we conclude that the jury could have rationally found each element of the charged offense was proven beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991) (en banc). We overrule appellant's third issue.

In his first and second issues, appellant challenges the jury's rejection of his theories of self-defense and defense of property. When an appellant raises a sufficiency challenge on the basis of his defensive theories under Chapter 9 of the Texas Penal Code, we view all the evidence in the light most favorable to the verdict and determine whether any rational factfinder (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against the appellant on the defensive issue beyond a reasonable doubt. *See id.* at 914; *Gaona v. State*, 498 S.W.3d 706, 709 (Tex. App.—Dallas 2016, pet. ref'd). Our duty is to ensure the evidence presented supports the jury's verdict and the State presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

Texas law recognizes under certain circumstances self-defense justifies the use of deadly force. *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a). A person is justified in using deadly force against another (1) if he would be justified in using force against another under section 9.31 and (2)

when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id*. § 9.32(a).

A person in lawful possession of property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate another's unlawful interference with the property. *Id.* § 9.41(a). A person unlawfully dispossessed of property by another is justified in using force against the other when and to the degree the actor reasonably believes the force is immediately necessary to recover the property if the actor uses the force immediately or in fresh pursuit after dispossession and the actor reasonably believes the other had no claim of right when he dispossessed the actor. *Id.* § 9.41(b).

A person, who would be justified in using force under section 9.41, is justified in using deadly force against another to defend property when and to the degree he reasonably believes deadly force is immediately necessary to prevent the other who is fleeing immediately after committing robbery or theft during the nighttime from escaping with the property, if he reasonably believes that the property cannot be recovered by any other means or the use of force other than deadly force to protect the property would expose him to a substantial risk of death or serious bodily injury. *Id.* § 9.42.

The defendant has the initial burden to produce evidence supporting a defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton*, 804 S.W.2d at 913. Once the defendant produces some evidence, the State has the burden of persuasion to disprove the claimed defense. *Zuliani*, 97 S.W.3d at 594; *Gaona*, 498 S.W.3d at 709. This burden of persuasion does not require the State to produce evidence refuting the raised defense. *Saxton*, 804 S.W.2d at 913. Rather, the State can meet this burden by proving its case beyond a reasonable doubt. *Id.* When a factfinder determines the defendant is guilty, there is an implicit finding against the defensive theory. *Zuliani*, 97 S.W.3d at 594.

Appellant testified he believed Hallam and Harewood colluded to steal the $1,400 rifle. After seeing Harewood attempt to take the rifle, appellant grabbed it. On appeal, appellant points to trial testimony about Harewood's drug history to show Harewood's motive to steal the expensive rifle. Although the jury heard testimony about Harewood's drug use, Harewood's mother testified he did not have any violent criminal history and he was not a violent person. The jury also heard Hallam's testimony about what occurred and she did not testify to any attempt to steal the rifle. Appellant never claimed he believed Harewood was armed or displayed any aggression. Appellant acknowledged he and Harewood had no prior conflicts. Despite appellant's claim he abandoned the firearm at the trailer before he left, the rifle was never recovered.

Because Hallam's testimony contradicts appellant's version of events and as the exclusive judge of the credibility of the witnesses, it was within the jury's province to disbelieve appellant's account of the events. *See Wise*, 364 S.W.3d at 903; *see also Saxton*, 804 S.W.2d at 914. Based on the evidence, the jury could have reasonably concluded appellant did not struggle with Harewood, was not responding to the use of deadly force, and appellant's use of deadly force was not immediately necessary to protect himself or his property. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a), 9.41(a)–(b), 9.42; *see* also *London v. State*, 325 S.W.3d 197, 203 (Tex. App.—Dallas 2008, pet. ref'd) (concluding defendant's testimony that he was threatened and in fear for his life did not conclusively prove self-defense); *Smith v. State*, 355 S.W.3d 138, 146 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (ruling testimony of defendant and defense witnesses did not conclusively prove claim of self-defense where jury also heard evidence undermining defendant's defensive claim).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found against appellant on his self-defense and defense of property claims beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Because the evidence is sufficient to support

the jury's implicit rejection of appellant's defensive claims, we overrule appellant's second and third issues.

In his fourth issue, appellant contends the trial court's judgment does not reflect his pleas to the enhancement paragraphs and the trial court's findings on those pleas. Appellant was charged by indictment with murder, enhanced by three prior convictions for possession of controlled substances. Appellant entered a written stipulation with the State admitting to each of the three prior convictions. However, during the punishment phase of the trial, appellant only was arraigned on the first enhancement paragraph and entered a plea of true. The State then recited the second and third enhancement offenses and introduced appellant's signed stipulation, as well as supporting evidence. However, there was no plea entered or finding made on the second and third enhancement paragraphs.

The trial court then presented the punishment charge to the parties for their review. The charge advised the jury that appellant's plea to the allegations in the *second* enhancement paragraph, rather than the first enhancement paragraph, "is received by the court." The charge also instructed the jury to find the *second* enhancement paragraph to be true and did not include the other enhancement paragraphs. Neither side objected to the charge. The jury returned a finding of true to the *second* enhancement offense.

The State has the burden of proof to show any enhancement offense was final under the law and the defendant was the person previously convicted of that offense. *Donaldson v. State*, 476 S.W.3d 433, 439 (Tex. Crim. App. 2015). A plea of "true" is sufficient to remove the State's burden of proof. *Id.* An appellate court can imply a finding of true when a defendant's plea of "true" as part of a plea agreement is affirmatively reflected in the record without an express finding of "true" by the trial court. *Id.* This Court has the authority to reform a trial court's judgment when the necessary information appears in the record. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*,

865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

Appellant asserts the judgment should be modified to properly reflect he pleaded true to all three enhancement paragraphs. However, after reviewing the record, we conclude appellant did not enter a plea to the second and third enhancement offenses, and the trial court did not find them to be true. We overrule appellant's fourth issue.

The trial court's judgment, however, mistakenly reflects "N/A" as appellant's plea and the trial court's finding as to the first enhancement paragraph. Appellant pleaded true to the first enhancement allegation and, without objection, the trial court stated the enhancement "[was] received by the court." Although the trial court did not make an express finding on the first enhancement paragraph, appellant's plea of true together with other evidence supported an implied finding in the absence of any other evidence that the trial court rejected the State's proof on the first enhancement. *See Donaldson*, 476 S.W.3d at 439. Therefore, we modify the "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph" sections in the judgment provisions to state "True," and the sections of the judgment titled "Plea to 2nd Enhancement Paragraph" and "Findings on 2nd Enhancement Paragraph" to state "N/A." *See Asberry*, 813 S.W.2d at 529–30.

## CONCLUSION

We modify the trial court's judgment and affirm as modified.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
170697F.U05

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JAMES EDWARD HIGHTOWER, Appellant

No. 05-17-00697-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F-1675485-J.
Opinion delivered by Justice Stoddart. Justices Lang and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Plea to 1st Enhancement Paragraph" shall state "True."
"Findings on 1st Enhancement Paragraph" shall state "True."
"Plea to 2nd Enhancement/Habitual Paragraph" shall state "N/A."
"Findings on 2nd Enhancement/Habitual Paragraph" shall state "N/A."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 27th day of June, 2018.