Santana GAONA, Appellant

v.

The STATE of Texas, Appellee

No. 05–15–00541–CR

Court of Appeals of Texas,
Dallas.

Opinion Filed July 18, 2016

Discretionary Review Refused
November 2, 2016

J. Daniel Oliphant, Jr., Rockwall, TX, for appellants.

Christine Ou, Susan Hawk, Dallas, TX, for appellees.

Before Justices Francis, Fillmore, and Schenck

## OPINION

Opinion by Justice Francis

A jury convicted Santana Gaona of murder and sentenced him to fifty years in prison. In two issues, appellant contends the evidence is legally insufficient to support the jury's rejection of his claims of self-defense and sudden passion. We affirm the trial court's judgment.

In August 2011, appellant's wife, Rosario, accused him of rape. The charges were ultimately dropped, but the couple remained separated. Two months later, Samuel Rojas, who was married to Rosario's sister, hosted a family birthday party. Rosario and several of her family members attended the party. Several hours into the party, appellant showed up and went to the back yard where several people were gathered. One of Rosario's sisters saw him and was upset that he was there. She confronted appellant, and he decided to leave.

Appellant was getting into his car when Samuel's brother, Javier, approached him and asked why he was leaving. Appellant explained that "they ran him off." Then Samuel walked up and also asked appellant why he was leaving. Appellant was seated in his convertible with the top and windows down as the three men talked. When Javier walked off to go to his car, Samuel and appellant continued to chat. A few minutes later, Jesse Benavides walked up and asked to speak with appellant. Benavides was the boyfriend of another sister of Rosario's.

Samuel said he moved back a couple of steps but remained close enough to hear what was said. Benavides was angry and told appellant he had "no shame" in coming to the party. He was talking loudly and wanted appellant to get out of the car and fight. Appellant told Benavides he did not want more problems with the police, and Benavides assured him he would not call the police if appellant got out of the car. When appellant still refused, Benavides called him a "chicken."

Benavides slapped appellant's windshield and turned to leave. As he was walking away, Benavides said "fucking mother," or a similar phrase. Appellant

immediately asked, "What did you say? Wait a minute." Samuel said appellant got out of the car with a pistol in his hand. This was the first time Samuel had seen appellant with a gun. Appellant walked toward Benavides, who stopped and turned around. Benavides told appellant he was not scared of his "little pistol," and appellant began shooting. Benavides tried to turn and duck, but appellant continued to shoot at him before fleeing the scene. Benavides was shot seven times and died from his injuries. A forensic pathologist testified all seven bullets entered Benavides' side or back.

Javier corroborated Samuel's version of what occurred and told the jury Benavides went up to the car and wanted to fight appellant. Benavides "said something" as he was "withdrawing," and appellant got out of the car carrying a pistol. Appellant walked toward Benavides, who stopped and said he was not afraid of "that little pistol." Javier saw appellant shoot Benavides two to three times. According to Javier, Benavides grabbed his side and slid against a nearby car. Javier ran to the back yard of the house to protect his children and heard more shots fired. Both Samuel and Javier testified that Benavides' hands were empty when appellant shot him, and neither heard Benavides ever threaten to kill appellant.

Appellant did not deny he shot Benavides and generally agreed with the events described by Samuel and Javier, up to the point where Benavides demanded he get out of the car and fight. Appellant said when he refused to fight, Benavides told him, "What I am going to do is I'm going to kill you, motherfucker." As he made the threat, appellant said Benavides reached for his hip pocket as if to grab a gun, but nothing was there. Appellant said he knew Benavides owned a gun because he had seen it some months before. Benavides

then started to walk toward the house but stopped at a car. Appellant said Benavides tried to open the car door, but it was locked, at which time he looked back at appellant and again threatened to kill him.

Appellant said because cars were passing on the street and he was focused on Benavides, there was "no way" for him to leave so he took his gun and got out of the car. He walked toward Benavides with the gun pointed to the ground. Samuel grabbed his hand or arm to take the gun, and Benavides "stepped forward." Appellant hit Samuel "to get him away from my gun," then lifted his hand and shot Benavides. Appellant said he did not know whether Benavides had a gun because Benavides was unable to get into the car, but he shot him because he saw Benavides was coming towards him and "feared" what he would do. Appellant did not remember what happened next or how many shots he fired, but he knew there were ten bullets in the magazine and only one was left after the shooting, indicating he shot at Benavides nine times.

On cross-examination, appellant acknowledged that he gave a written statement to the police after his arrest. The statement was made in Spanish and later translated into English. The prosecution questioned him about inconsistencies between his statement and his testimony. In particular, appellant's statement omitted that Benavides reached for his hip as he was threatening to kill appellant, and Samuel grabbed his arm or hand. Appellant testified he told the police this information, but it was not included in his statement. Appellant agreed that Benavides never touched him. Appellant also agreed he told the police that Benavides' hands were empty right before he shot him, although at trial he said Benavides had one hand in his pocket.

■ In his first issue, appellant challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim.

■ When an appellant brings a sufficiency challenge on the basis of his claim of self-defense, we do not look to whether the State presented evidence that refuted self-defense. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991). Instead, after reviewing all the evidence in the light most favorable to the verdict, we determine whether any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and found against the appellant on the self-defense issue beyond a reasonable doubt. *Id.* The jury resolves any conflicts in the testimony and determines the credibility of the witnesses and the weight to be given to their testimony. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex.Crim.App.2012). Our duty is to ensure the evidence the State presented supports the jury's verdict and the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex.Crim. App.2012).

As charged here, a person commits murder if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)(2) (West 2011). A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). A person is justified in using deadly force against another (1) if he would be justified in using force against another under section 9.31 and (2) when and to the degree he reasonably believes

the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a).

■ The defendant has the initial burden of producing evidence to raise self-defense, and the State then has the final burden of persuasion to disprove it. *Saxton*, 804 S.W.2d at 914. The State is not obligated to offer evidence refuting a claim of self-defense; rather, the State is required to prove its case beyond a reasonable doubt. *Id.* When a fact finder determines the defendant is guilty, there is an implicit finding against the defensive theory. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App.2003).

Appellant argues the evidence demonstrated he was legally justified in using deadly force against Benavides. Relying on his own version of events, he asserts he was "trapped" in his car when Benavides confronted him, demanded to fight, and then threatened to kill him while reaching for his hip pocket. He contends he had "no other alternative" than to approach Benavides with his gun but was then "attacked" by Samuel, who grabbed for his gun. At that point, he contends, he was "forced to shoot" Benavides to "stop the attack and fear over what was happening" to him.

But, in addition to the above testimony, appellant agreed Benavides did not display a weapon, pull anything from his pocket, enter the car in which appellant believed there might be a weapon, or touch appellant. Even if we ignore these facts and assume appellant's version of events would be sufficient to justify his use of deadly force, other evidence disputed that version and supports the jury's rejection of his self-defense claim.

The Rojas brothers witnessed the initial encounter and the shooting. While both agree Benavides confronted appellant and

wanted to fight, neither heard Benavides ever threaten to kill appellant. Samuel was standing only a couple of steps behind Benavides and said he heard the entire conversation; Javier was not as close but knew the men were arguing and heard some of their words. Once appellant refused to fight, Benavides slapped the windshield, said "fuck your mother," "fucking mother," or something similar, and walked off. At that point, appellant got out of his car, walked up to Benavides, and shot him seven times in the side and back as Benavides fell to the ground. Samuel and Javier both said Benavides' hands were empty, and even appellant acknowledged he told police as much after his arrest. Although he claimed at trial that Benavides had one hand in his pocket, he did not remember giving police this information and it was not in his written statement.

In summary, the jury was entitled to resolve any conflicts in the evidence and could have determined the Rojas brothers were more credible than appellant. A rational jury could have concluded appellant never believed deadly force was immediately necessary to protect himself against any unlawful deadly force but that he was angered when Benavides cursed at him. Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that appellant murdered Benavides and also could have found against him on his claim of self-defense. We overrule the first issue.

■ In his second issue, appellant alternatively contends the evidence is legally insufficient to support the jury's rejection of sudden passion. He relies on the same set of facts to argue he was "acting under an excited emotional state" when he shot Benavides and then "blacked out."

■ Once a defendant has been found guilty of murder, he may raise, at the punishment phase, the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE ANN. § 19.02(d). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is reduced to a second-degree felony. *See id.* Under the circumstances here, a person acts with "sudden passion" if the passion is directly caused by and arose out of provocation by the individual killed. *Id.* § 19.02(a)(2). An "adequate cause" is one that would "commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

■ Although the issue of sudden passion is a punishment issue, it is analogous to an affirmative defense because the defendant has the burden of proof by a preponderance of the evidence. *See Matlock v. State*, 392 S.W.3d 662, 667 & n. 14 (Tex. Crim.App.2013); *Rodriguez–Olivas v. State*, No. 02–13–00520–CR, 2015 WL 6081773, at *19 (Tex.App.–Fort Worth Feb. 10, 2016, pet. ref'd) (mem. op., not designated for publication). For this reason, a finding on sudden passion may be evaluated for legal and factual sufficiency. *Cf. Butcher v. State*, 454 S.W.3d 13, 20 (Tex.Crim.App.2015) (addressing affirmative defenses); *see Smith v. State*, 355 S.W.3d 138, 147–48 (Tex.App.–Houston [1st Dist.] 2011, pet. ref'd) (addressing legal sufficiency of finding on sudden passion issue); *Gillam v. State*, No. 05–11–01334–CR, 2013 WL 1628386, at *15–16 (Tex.App.–Dallas Apr. 16, 2013, pet. ref'd) (not designated for publication) (addressing legal and factual sufficiency of finding on sudden passion).

When reviewing a legal sufficiency challenge to a negative finding on sudden pas-

sion, the standard of review is the same as the legal sufficiency standard utilized in civil cases. *Smith*, 355 S.W.3d at 147–48. First, we review the record for a scintilla of evidence to support the jury's negative finding on sudden passion and disregard all evidence to the contrary unless a reasonable fact finder could not. *See id.* If we find no evidence that supports the finding, we determine whether the contrary proposition was established as a matter of law. *Id.* at 148. We defer to the fact finder's determination of the credibility of the testimony and weight to give the evidence. *Id.*

Examining the record under the first prong, we conclude there is some evidence that appellant was not under the immediate influence of sudden passion when he shot Benavides. The Rojas brothers testified Benavides demanded to fight appellant and, when he refused, walked away cursing. Appellant immediately got out of his car, went up to Benavides, and shot him seven times. Neither Rojas brother heard Benavides threaten to kill appellant nor did either ever see Benavides with a weapon. While it is undisputed that Benavides yelled at, argued with, cursed at, and demanded to fight appellant, those actions do not amount to an adequate cause to support a finding of sudden passion. *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex.Crim.App.2005) (concluding victim's yelling at and pushing of defendant did not "rise to the level of adequate cause"). We conclude there is more than a scintilla of evidence to support the jury's negative finding on sudden passion and overrule the second issue.

We affirm the trial court's judgment.