**AFFIRMED and Opinion Filed November 20, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-17-01214-CR

**DONALDO VELASQUEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F16-12157-I**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Bridges

Donaldo Velasquez appeals his murder conviction. A jury convicted appellant and sentenced him to seventy-five years' confinement and a $10,000 fine. In three issues, appellant argues the evidence was legally and factually sufficient to support a sudden-passion finding despite the jury's finding that appellant did not act under the immediate influence of sudden passion, the trial court's assessment of a clerk's fee violated his rights under the Texas Constitution, and the judgment reflects an unsupported $25 addition above the total on the bill of costs. We affirm the trial court's judgment.

On July 31, 2016, Mari Moreno and her boyfriend, Arnold Pinilla, visited several restaurants in Rockwall and Addison and ended up at Casa Vieja restaurant in Addison. Pinilla and Moreno were both drinking, and Moreno became sick. Pinilla was dancing and "drunk" and

did not want to leave, but Moreno went outside and called a Lyft driver to take them home. Moreno received a call from the Lyft driver who said he could not find her. Moreno explained to the driver that she was sitting on a bench outside the restaurant. Pinilla came outside, and Moreno saw a man driving a white car and "driving slow and staring at" her. The white car stopped, and Moreno asked the driver, appellant, if he was the Lyft driver. Appellant said he was the Lyft driver, and Moreno told Pinilla "Love, let's go." Appellant said to Moreno, "No love just you." Moreno thought appellant was flirting with her.

Moreno and Pinilla got in the back seat which was "messy" and contained "boxes like he was moving out or something, boxes, trash, and beers and beer bottles." The state of the car "creeped [Moreno] out," but she thought appellant might be "just moving," so she stayed in the car. Appellant started driving and then stopped and told Pinilla to come sit in the front seat. Appellant stopped the car, and Pinilla got in the front seat. Appellant began driving again, and Moreno asked how appellant was going to get to their destination if he did not have the address. Moreno pulled up her home address on her phone and showed it to appellant. Appellant took Moreno's phone from her, which Moreno thought was "weird."

At some point, appellant "was doing nasty things with his tongue" toward Moreno. Moreno realized "something was wrong" based on the fact that appellant "wasn't professional," he did not have a phone, and "his car was a mess." This realization "kind of freaked [Moreno] out," and she tried to tell Pinilla something was wrong. Pinilla gestured at Moreno to indicate she should "be calm." Appellant had Moreno's phone in his hand when the Lyft driver called. Appellant answered the call and told the driver, "I got them, it's okay, I got them" and hung up "like it was his phone." Before appellant had driven very far, he asked for money. Moreno and Pinilla "kind of laughed" and asked if appellant was "kidding." Moreno thought "why should we give you money if we're not even home." Pinilla remained calm until Moreno tried to get her

phone back from appellant, and appellant was "holding [Moreno's] phone and we were like doing force." Pinilla "got mad" and told appellant to "give it to her," and Moreno got her phone back.

Moreno and Pinilla had appellant stop the car and got out. Appellant drove off and stopped at a stop sign, and Pinilla "walk[ed] in the street and he started making signs." Appellant got out of his car and went to the trunk where he "took something from his trunk." Appellant said, "Don't make me kill you, bro." Appellant and Pinilla walked toward each other and, when they met, started pushing each other. Moreno saw that appellant was stabbing Pinilla. Appellant then ran to his car and left, and Pinilla "walk[ed] for a little bit and then just fell." Moreno ran to Pinilla and saw he was "bleeding a lot." Pinilla died at the scene.

Moreno called the police, but she did not know her location, and she had to run to the stop sign to see the street sign there. When police arrived, they took Moreno to the police station where she gave a statement. Over the course of the investigation, Moreno was able to describe appellant and do a composite sketch because she got a good look at appellant's face.

Appellant was charged by indictment with murdering Pinilla. At trial, Carrollton police detective Kent Rogers testified he was assigned as the lead detective on the case of Pinilla's murder. Appellant was brought to the Carrollton police department where, using a translator, Rogers interviewed him. Rogers first read appellant the Miranda warning, which was translated into Spanish. Appellant initially said that, on the night of July 30 into the morning of July 31, 2016, he went to visit his brothers-in-law in Carrollton, went directly home when he found they were not at home, and then went to a Kroger where he bought beer before returning home once again. At some point in the interview, appellant said he wanted to tell the truth, and he began "talking about his version of the events." Appellant said Pinilla was "hitting his window and busted his window," which Rogers knew was untrue because officers had broken appellant's window when they arrested him. Rogers had also walked the crime scene and found no broken

glass.  Appellant said he passed by Moreno, she tried to get into his car but appellant "looped around," and Moreno then "asked for a ride and offered $20."  Appellant said that, after Pinilla and Moreno got out of his car, he started to drive away but "became angry" and stopped the car to confront Pinilla and Moreno and get the $20 he was promised.  Appellant said "he was still in his car and he got out of the car and went back and opened the trunk."  Appellant took a knife that he indicated was approximately ten inches long out of the trunk.  Appellant said that "what made him angry" was the fact that he did not get paid $20 for the ride.  Appellant initially said he acted in self-defense but, after Rogers "confronted him with facts," appellant admitted he told Pinilla "Give me the money, I have a knife."  Appellant said he stabbed Pinilla "two times in the stomach," though Rogers knew Pinilla had been stabbed eleven times.

Elizabeth Ventura, a Dallas County medical examiner, testified she performed an autopsy on Pinilla.  Ventura testified Pinilla received "nine incised wounds and three stab wounds," which caused his death.  One stab wound was five inches deep and went through Pinilla's heart, and Ventura testified "this stab wound was a fatal injury."

The jury found appellant guilty of murder.  At punishment, the jury charge asked whether appellant caused Pinilla's death while under the immediate influence of sudden passion arising from an adequate cause.  The jury answered this question "No" and assessed punishment at seventy-five years' confinement and a $10,000 fine.  This appeal followed.

A person commits murder by intentionally or knowingly causing the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1).  Typically, murder is a first-degree felony.  *Id.* § 19.02(c). However, at the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. *Id.* § 19.02(d).  If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.  *Id.* § 19.02(d).

–4–

"Adequate cause" means a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). The accused may not rely upon a cause of his own making, such as precipitating a confrontation. *See Naasz v. State*, 974 S.W.2d 418, 423 (Tex. App.—Dallas 1998, pet. ref'd); *Trevino v. State*, 157 S.W.3d 818, 822 (Tex. App.—Fort Worth 2005, no pet.). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2); *see also McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005) (defendant raising sudden passion to mitigate murder conviction must prove there was an adequate provocation; passion or an emotion such as fear, terror, anger, rage, or resentment existed; the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and there was a causal connection between the provocation, the passion, and the homicide).

In his first issue, appellant argues the evidence was "legally and factually sufficient to support a sudden passion finding despite the jury's non-finding on that issue given the unique, one-time relationship between the participants in this murder, the provocation [appellant] took on, and the purpose of a sudden passion finding: to provide lesser maximum punishment for those whose actions are explained by having lost their temper."

Although the issue of sudden passion is a punishment issue, it is analogous to an affirmative defense because the defendant has the burden of proof by a preponderance of the evidence. *Gaona v. State*, 498 S.W.3d 706, 710 (Tex. App.—Dallas 2016, pet. ref'd); *see Matlock v. State*, 392 S.W.3d 662, 667 & n.14 (Tex.Crim.App.2013). When an appellant asserts that the evidence is legally insufficient to support an adverse finding on an affirmative defense, we construe the issue as an assertion that the contrary was established as a matter of law. *Matlock*, 392 S.W.3d at 669.

We first search the record for evidence favorable to the finding, disregarding all contrary evidence unless a reasonable fact-finder could not. *Id.* If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law. *Id.* Only if the appealing party establishes that the evidence conclusively proves his affirmative defense and "that no reasonable jury was free to think otherwise" may the reviewing court conclude that the evidence is legally insufficient to support the jury's rejection of the defendant's affirmative defense. *Id.* at 670.

A defendant may also raise a factual sufficiency challenge to the jury's adverse finding on his affirmative defense. *Id.* In making a factual sufficiency claim, the defendant is asserting that, considering the entire body of evidence, the jury's adverse finding on his affirmative defense was so "against the great weight and preponderance" of that evidence to be manifestly unjust. *Id.* at 671. In the factual-sufficiency review of a rejected affirmative defense, an appellate court views the entirety of the evidence in a neutral light, but it may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Id.* Therefore, an appellate court may sustain a defendant's factual sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id.* If an appellate court conducting a factual sufficiency review finds that the evidence supporting the affirmative defense so greatly outweighs the State's contrary evidence that the verdict is manifestly unjust, then the appellate court may reverse the trial court's judgment and remand the case for a new trial. *Id.* at 672. The remedy in both civil and criminal cases for an appellate reversal based upon a factual sufficiency claim that the jury's verdict is against the great weight of the evidence is a new trial, not an acquittal. *Id.*

Here, Moreno and Pinilla got in appellant's car because appellant lied and said he was a Lyft driver. Before and during the ride, appellant was flirting with Moreno and "doing nasty things with his tongue" toward her. Appellant took Moreno's phone and treated it "like it was his phone." Appellant asked for money before reaching their destination and only returned Moreno's phone when Pinilla "got mad" and told appellant to "give it to her." Appellant let Moreno and Pinilla out of the car and began driving away. Pinilla was "making signs" in the street as appellant drove away; however, Pinilla was unarmed. Appellant stopped his car, got out, went to his trunk, and got a ten-inch knife. Appellant and Pinilla approached each other, and appellant stabbed Pinilla three times and inflicted nine incised wounds. Appellant then ran to his car and left the scene where Pinilla lay dying. Thus, the evidence showed appellant lured Moreno and Pinilla into his car by lying to them, appellant made lewd advances toward Moreno, appellant let Moreno and Pinilla out in an unfamiliar location, and appellant drove away. Instead of driving away, appellant stopped, retrieved a knife from his trunk, and confronted Pinilla. Appellant said, "Don't make me kill you, bro" and advanced on Pinilla and stabbed him three times and cut him nine times. After weighing all the evidence, we conclude that the evidence is legally and factually sufficient to support the jury's negative finding on the issue of whether appellant acted under the immediate influence of sudden passion when he murdered Pinilla. *See Matlock*, 392 S.W.3d at 669; *Trevino*, 157 S.W.3d at 822; *Naasz*, 974 S.W.3d at 423. We overrule appellant's first issue.

In his second issue, appellant argues the trial court's assessment of a clerk's fee violates the Texas Constitution because the statute authorizing the fee does not restrict the use of the fee to a criminal justice purpose. Thus, appellant argues, the fee is a tax and, because only the executive may assess taxes, the statute improperly delegated executive authority to the judicial officer and is facially unconstitutional. A panel of this Court recently addressed this specific issue and concluded the clerk's fee is not an impermissible tax collected by the judiciary. *Thornton v. State*,

No. 05-17-00220-CR, 2018 WL 2773390, at *3 (Tex. App.—Dallas June 11, 2018, no pet.) (not designated for publication).  The clerk's fees are intended to be spent reimbursing the clerk for the services listed in the statute attendant to a criminal court proceeding, and the clerk's fee serves a legitimate criminal justice purpose.  *Id.* (citing *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017)).  We overrule appellant's second issue.

In his third issue, appellant complains the trial court's judgment reflects an unsupported $25 addition above the total on the bill of costs, and the judgment should be modified.  Specifically, appellant claims that the bill of costs reflects fees in the amount of $314 while the judgment reflects court costs in the amount of $339.  Appellant asserts the only accounting for the additional $25 is the bill of costs, which indicates it is a cost for an installment plan and is part of "BATCH 31 DAY FEES."  Our review of the bill of costs shows an adjusted balance of costs in the amount of $339.  As appellant points out, the additional $25 is identified as an added fee for an "installment plan" or time payment fee pursuant to TEX. LOC. GOV'T CODE § 133.103.  As such, the fee is authorized, and the amount of court costs of $339 does not require modification.  *Thornton*, 2018 WL 2773390, at *3.  We overrule appellant's third issue.

We affirm the trial court's judgment.

/David L. Bridges/
_____
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

171214F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DONALDO VELASQUEZ, Appellant

No. 05-17-01214-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F-1612157-I.
Opinion delivered by Justice Bridges.
Justices Francis and Lang-Miers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 20, 2018.