**Affirm and Opinion Filed August 24, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-00477-CR**

_____

**KEITHION DYWANE DERRICK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1525060-P**

## MEMORANDUM OPINION

Before Justices Molberg, Goldstein, and Smith
Opinion by Justice Molberg

Appellant Keithion Derrick was convicted of aggravated assault causing serious bodily injury with a deadly weapon, involving family violence, and sentenced to five years' confinement. He now argues on appeal that the jury's verdict was not supported by legally sufficient evidence; specifically, he contends that a rational jury could not have rejected his claim of self-defense. We disagree and affirm the trial court's judgment in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

BACKGROUND

Appellant lived at his grandparents' house in Garland along with his sister, Kimberlee Nelson, and numerous other members of their family. As Nelson put it at trial, "We got along like family. Sometimes it was good, sometimes it was bad."

It was bad on the night of December 10, 2015. Nelson got off work at Popeyes at 11:00 p.m., and she went home and was talking to her nephew in the living room when appellant arrived at the house. Nelson testified that she and appellant then renewed their longstanding argument about what school appellant's daughter should attend. The argument became personal and heated. Appellant shoved his finger in Nelson's face before leaving the living room and going to his bedroom down the hall. On cross-examination, defense counsel asked Nelson if she told appellant, "I stabbed you before, I'll stab you again." Nelson stated that she did not recall saying that, but that she "might have said it." Nelson went to the bathroom, which was in the same hall as appellant's room.

Nelson testified that, as she left the bathroom and was walking back towards the living room, appellant shot her in her left arm, near her elbow. She did not feel anything at first—she "just heard it"—but then she realized she could not move her arm. She fell against the wall on the right side of the hall and appellant shot her again in the left leg. Nelson made it living room before she fell on the floor near the couch.

Appellant testified in his defense and told a different story. He said that he was already home when Nelson got home after work, and that an argument started immediately. Nelson "charged at [appellant] and choked him" and scratched him before appellant's son broke them up. Appellant went to his room. Nelson followed him and "was trying to stab [him] through the door." Appellant testified that he was nervous considering that Nelson had stabbed him once before, in 1999.[1] So he got his handgun. After things quieted down, appellant decided to try to leave the house. He said "that's when she was running back down the hallway," saying, "Bitch, I stabbed you once, I'll stab your ass again." Appellant testified that Nelson "had her arm up," running towards him, and there was nowhere for him to go. Appellant stated that there was no doubt in his mind that Nelson had a knife in her hand, so he "shot her to stop her." Her shot her a second time because "she was still coming."

On cross-examination, appellant clarified that, when he was in his room, his door was closed and dead-bolted. He said that Nelson then busted the door open and that is when he saw that she had a knife. The State cross-examined him, questioning why he did not tell the police about these details. Appellant testified that he could not remember whether he told the police that Nelson busted through his door. Appellant also testified that he did not remember whether Nelson still had the knife in hand when he shot her the second time.

---

[1] During her testimony, Nelson said that she pleaded guilty in 1999 in an aggravated assault case in which she had attacked appellant with a can. She was placed on probation, which she completed.

Nelson was taken to Texas Health Presbyterian Hospital in Dallas, where she remained for five days. Her elbow was shattered. Consequently, she could not use her left arm for anything, and, at the time of trial, she could pick up no more than two pounds with her left hand.

Detective Wendy Sheriff spoke with Nelson and examined her wounds. Sheriff testified that, based on the positions of Nelson's wounds, she determined that Nelson must have been facing away from appellant when she was shot. On cross-examination, she testified that if someone were holding a knife in their left hand and had it raised, that could also be consistent with Nelson's elbow wound. Someone at the scene—she did not remember who—told Sheriff that Nelson told appellant, "I've stabbed you once before, and I'll stab you again."

Sheriff also interviewed appellant. She testified that he told her that he carried a knife, and that he had emptied his pockets prior to the police arriving. She recovered a pocket knife at the crime scene—it was "in the same proximity" as appellant's gun, which he had left in the hallway. A photo of the hallway was admitted at trial that showed the knife on the floor; it was folded up. Sheriff said that she did not find any other knives at the crime scene.

DISCUSSION

*Standard of review*

The State must prove each essential element of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). When reviewing the

sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. at 319. When the record supports conflicting reasonable inferences, we presume that the jury resolved the conflicts in favor of the verdict. *Id*. at 326.

The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Curry v. State*, 622 S.W.3d 302, 310 (Tex. Crim. App. 2019). The trier of fact may choose to disbelieve all or any part of a witness's testimony. *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). "A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

*Applicable law*

A person commits aggravated assault if he commits assault—that is, "intentionally, knowingly, or recklessly causes bodily injury to another"—and causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a). Aggravated assault is a felony in the first degree if, as here, "the actor uses a deadly weapon

–5–

during the commission of the assault and causes serious bodily injury to a person whose relationship to . . . the defendant is described" by section 71.003 of the family code. *See* TEX. PENAL CODE ANN. § 22.02(b)(1). But a person "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. § 9.31(a). Deadly force in self-defense is justified when a person reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id*. § 9.32(a)(2)(A). Deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01(3). A reasonable belief is one that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id*. § 1.07(42).

A defendant bears the burden to produce some evidence that supports his claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). "Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove" self-defense beyond a reasonable doubt. *Id*. "The burden of persuasion is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt." *Id*.; *see also Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991) (en banc). "The jury is the sole judge of the credibility of defensive evidence, and it is free to accept it or reject it." *Rankin v. State*, 617 S.W.3d 169, 183 (Tex. App.—Houston [1st Dist.] 2020,

pet. ref'd) (citing *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018));

*see also London v. State*, 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd)

("Self-defense is an issue of fact to be determined by the jury.").

In sum,

> [i]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Saxton*, 804 S.W.2d at 914.

*Analysis*

Viewing the evidence in a light most favorable to the verdict, the jury could have rationally believed Nelson's testimony against appellant's and found beyond a reasonable doubt that appellant's use of deadly force was not immediately necessary to protect himself against any use or attempted use of unlawful deadly force. Nelson testified that she was walking down the hallway away from appellant—not attacking appellant, not approaching appellant, and not wielding any weapon—when appellant shot her twice. Nelson's version of what happened was consistent with the location of her gunshot wounds, as Detective Sheriff testified. Furthermore, just one knife was found at the scene, and the jury could have reasonably inferred that it was the knife appellant emptied from his pockets given that it was an unfolded pocket knife that was found where appellant also left his handgun. Even if Nelson verbally

threatened to stab appellant, as she conceded she might have, the use of force against another is not justified "in response to verbal provocation alone." *See* TEX. PENAL CODE ANN. § 9.31(b). Force is only justified when it is "immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a).

In short, the jury was free "to resolve any conflicts in the evidence and could have determined" that Nelson was more credible than appellant, and a "rational jury could have concluded appellant never believed deadly force was immediately necessary to protect himself against any unlawful deadly force but that he was angered" following his argument with Nelson. *See Gaona v. State*, 498 S.W.3d 706, 710 (Tex. App.—Dallas 2016, pet. ref'd). Thus, viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found against appellant on his self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Appellant's sole issue is overruled.

CONCLUSION

We affirm the trial court's judgment.

/Ken Molberg/

KEN MOLBERG
JUSTICE

190477f.u05
Do Not Publish
TEX. R. APP. P. 47

–8–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KEITHION DYWANE DERRICK,
Appellant

No. 05-19-00477-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1525060-P.
Opinion delivered by Justice
Molberg. Justices Goldstein and
Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 24th day of August, 2021.