**Affirmed and Opinion Filed July 11, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-01026-CR**

**RUBEN ALVARADO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F19-75993-N**

## MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Molberg

After a jury unanimously found appellant Ruben Alvarado guilty of murder, rejected his special issue of sudden passion, and returned its verdict regarding punishment, the trial court entered judgment convicting Alvarado of first degree murder and sentencing him to thirty-seven years' confinement in the Texas Department of Criminal Justice's Institutional Division.[1] In two issues, Alvarado

---

[1] *See* TEX. PENAL CODE § 19.02(c), (d) (stating the offense is a felony of the first degree except as provided in subsection (d), which provides the offense is a felony of the second degree if, at the punishment stage of a trial, the defendant raises an issue and proves in the affirmative by a preponderance of the evidence he caused the death under the immediate influence of "sudden passion" arising from an "adequate cause"—terms specifically defined in subsection 19.02(a). *See id*. §19.02(a)(1), (2).

argues we should reverse the judgment as to punishment and remand the case for a new punishment hearing because (1) when the evidence is viewed neutrally, the jury's rejection of the sudden passion special issue was so against the great weight and preponderance of the evidence as to be manifestly unjust—or, in other words, was based on factually insufficient evidence, and (2) the trial court violated his common law right to allocution. Because we disagree with the first issue and Alvarado failed to preserve error on the second, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. BACKGROUND

Alvarado was charged by indictment with the murder of Jason Haslett, an individual both parties agree presented as Chynal Lindsey, a transgender female, just prior to death.[2]

The indictment alleged that on or about June 1, 2019, in Dallas, Texas, Alvarado did unlawfully then and there intentionally and knowingly cause Haslett's death, intend to cause Haslett serious bodily injury, and commit an act clearly dangerous to human life and thereby cause Haslett's death—all by strangling, choking, and hitting Haslett and inflicting blunt force trauma to Haslett with Alvarado's hands and fists, a deadly weapon, and a belt, a deadly weapon, and an unknown object, a deadly weapon, the exact nature and description of which was unknown and unknowable to the grand jury.

---

[2] Consistent with the indictment, we refer to the deceased as Haslett.

Alvarado pleaded not guilty, and a jury decided both the guilt/innocence and punishment phases. Twenty witnesses, including Alvarado, testified in the guilt/innocence phase. Six witnesses, but not Alvarado, testified in the punishment phase.

In the guilt/innocence phase, Alvarado did not deny taking someone's life and admitted he intended to strangle the deceased. On direct examination, Alvarado testified he pushed and punched Haslett and placed a belt around Haslett's neck until Haslett stopped moving, at which point Alvarado thought Haslett was dead. Alvarado testified:

> Q. Okay. All right. So, um, [Haslett] – he got aggressive with you. What did he do?
>
> A. He said he was going to need at least a ride or some money to get back. I told him I was not going to do that. So he started getting aggressive, so I told him to get out. I tried to push him. He just wouldn't get out, and he tried to see – he tried to get on top of me. And at that time, I was – I was scared. I didn't know what to do, you know. I was in fear for my life. I didn't know what he was – what was his plan to do, you know. I didn't know if he was trying to rob me or – or assault me, or I didn't know. So, after that, I told him to get out. Um. I punched him a couple of times, and he just wouldn't stop, you know. So I got on top of him. I took off my belt, you know. I panicked. I put it on his neck, and I was holding it for a couple of minutes, you know. And after that, he just – he just stopped moving. Um. I was – I was pretty scared, you know. Um. I seen that he wasn't moving no more, you know. . . .
>
> Q. Okay. At that – when he – when he wasn't moving, what did you think was – was happening there?
>
> A. After I seen that he – he stopped moving, I – I thought he was dead.

Q. Okay. So what – what were you thinking then when he – what was going through your mind at that point?

A. Man, I just panicked. You know, I didn't realize what had happened, you know. It just happened so quick. I got really scared.

After both sides rested in the guilt/innocence phase, the trial court instructed the jury on various matters, including self-defense. The jury implicitly rejected Alvarado's self-defense claim by finding him guilty of murder. Alvarado does not challenge the jury's finding of guilt on appeal.

Six witnesses testified in the punishment phase, but Alvarado elected not to. At the conclusion of the evidence in the punishment phase, over the State's objection, the trial court instructed the jury on sudden passion. Both parties' counsel mentioned sudden passion in their closing arguments.

When the jury returned their verdict in the punishment phase, the jury rejected Alvarado's special issue of sudden passion[3] and assessed punishment at thirty-seven years' imprisonment in TDCJ's Institutional Division. After the trial court excused the jury from service, the following exchange occurred:

[THE COURT]: At this time, I will proceed to sentence Mr. Alvarado. Is there any legal reason sentence should not now be imposed?

[DEFENSE COUNSEL]: No, sir.

THE COURT: It is the order, judgment and decree of the Court that you be taken by the Sheriff of Dallas County and turned over to an agent of the Institutional Division of the [TDCJ] where you shall be confined

---

[3] The verdict form stated, "We, the jury do not find and believe by a preponderance of the evidence that in Dallas County, Texas, on the 1st day of June, 2019, the defendant, Ruben Alvarado, caused the death of Jason Haslett while he, Ruben Alvarado, was under the immediate influence of sudden passion arising from an adequate cause, and therefore unanimously answer the issue NO."

–4–

for a period of 37 years or until the sentence of this court is otherwise discharged in accordance with the law.

The sentence begins today, and you will get credit for your back time. There is no fine in this case. At this time, that concludes this hearing.

The trial court entered judgment convicting Alvarado of first degree murder and sentencing him to thirty-seven years' imprisonment in TDCJ's Institutional Division. The court also certified Alvarado's right to appeal.

Alvarado timely appealed and was appointed new appellate counsel. Alvarado also filed a motion for new trial, which was overruled by operation of law.

## II. ISSUES AND ANALYSIS

### A. Sudden Passion

In his first issue, Alvarado asks us to reverse the judgment as to punishment and remand the case for a new punishment hearing because, he argues, the jury's rejection of sudden passion was so against the great weight and preponderance of the evidence as to be manifestly unjust—or, in other words, the jury's negative finding on sudden passion was based on factually insufficient evidence.

We have described the law regarding sudden passion as follows:

> A defendant found guilty of murder may raise, at the punishment phase of the trial, the issue of whether he caused the death of the complainant under the immediate influence of sudden passion arising from an adequate cause. [TEX. PENAL CODE] § 19.02(d). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the available range of punishment is reduced from that of a first degree felony to that of a second degree felony. *Id.* A defendant acts with sudden passion if he acts with "passion directly caused by and arising out of provocation by the individual killed." *Id.* § 19.02(a)(2). The passion must arise at the time of the offense and not be solely the result

–5–

of former provocation. *Id*. "Adequate cause" is defined to mean cause that would "commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1).

To be entitled to an affirmative finding on sudden passion, a defendant must demonstrate that "there was an adequate provocation, that a passion or an emotion such as fear, terror, anger, rage, or resentment existed, the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005); *Cornett v. State*, 405 S.W.3d 752, 757 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Neither ordinary anger nor fear alone raises an issue of sudden passion arising from adequate cause. *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also Naasz v. State*, 974 S.W.2d 418, 425 (Tex. App.—Dallas 1998, pet. ref'd) (holding that a defendant's testimony of being upset and angry over the culmination of events that had been ongoing for some time did not rise to level of adequate cause). Nor may sudden passion be the result of former provocation; the passion must arise at the time of the offense. *Moncivais*, 425 S.W.3d at 407.

*Ross v. State*, No. 05-18-00262-CR, 2019 WL 3543578, at *10–11 (Tex. App.—Dallas Aug. 5, 2019, no pet.) (mem. op., not designated for publication) (internal footnote omitted). We explained that although the issue of sudden passion is a punishment issue, it is analogous to an affirmative defense because the defendant has the burden of proof by a preponderance of the evidence. *Id*. at *11 (first citing *Matlock v. State*, 392 S.W.3d 662, 667 & n.14 (Tex. Crim. App. 2013); then citing *Gaona v. State*, 498 S.W.3d 706, 710–11 (Tex. App.—Dallas 2016, pet. ref'd)).

We also explained that a finding on sudden passion may be evaluated for both legal and factual sufficiency. *Id*. at *11 (citing *Gaona*, 498 S.W.3d at 710–11). Because in this appeal Alvarado only challenges the factual sufficiency of the jury's

finding on sudden passion, we need not discuss legal sufficiency review standards[4] and focus our analysis on factual sufficiency review standards instead.

In reviewing a factual sufficiency challenge to the jury's negative finding on a sudden passion special issue, we consider all the evidence in a neutral light, bearing in mind that the jury, as the trier of fact, assesses the weight of the evidence and the credibility of the witnesses' testimony. *Matlock*, 392 S.W.3d at 671; *see also Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). We will sustain a defendant's factual sufficiency claim only if the verdict is so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Butcher*, 454 S.W.3d at 20; *Matlock*, 392 S.W.3d at 671; *see also Ruiz v. State*, No. 05-17-00669-CR, 2018 WL 6261502, at *4 (Tex. App.—Dallas Nov. 30, 2018, no pet.) (mem. op.). We may not, however, intrude on the fact finder's role as the sole judge of the weight and credibility of the witnesses' testimony. *See Matlock*, 392 S.W.3d at 671; *Ojukwu v. State*, No. 05-07-01436-CR, 2008 WL 3307111, at *3 (Tex. App.—Dallas July 31, 2008, pet. ref'd) (mem. op. not designated for publication).

The parties agree on the standards we are to apply but disagree on the conclusion we should reach. Alvarado argues we should conclude the jury's finding on the sudden passion special issue was so against the great weight of the evidence

---

[4] We discuss such standards in *Ross*, however. *See Ross*, 2019 WL 3543578, at *11.

as to be manifestly unjust, and as support, Alvarado cites *Beltran v. State*, 472 S.W.3d 283 (Tex. Crim. App. 2015) and *Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003) (per curiam), neither of which involve the same factual sufficiency issue Alvarado raises on appeal.[5]

Similar to *Ross*, from the evidence presented at trial, the jury could have could have reasonably believed Alvarado was an aggressive and violent individual and could have reasonably disbelieved much of Alvarado's version of the events. After reviewing all the evidence relevant to sudden passion in a neutral light, we cannot conclude the jury's rejection of Alvarado's claim of sudden passion arising from an adequate cause "is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *See Ross*, 2019 WL 3543578, at *15 (citing *Matlock*, 392 S.W.3d at 671).

We overrule Alvarado's first issue.

## B. Common Law Right to Allocution

In his second issue, Alvarado argues we should reverse the judgment as to punishment and remand for a new punishment hearing because the trial court

---

[5] Both *Beltran* and *Trevino* involved alleged error over the failure to submit a sudden passion special issue to the jury, a matter not at issue in this appeal. *See Beltran*, 472 S.W.3d at 289 (identifying issue on appeal as whether we erred in holding that the trial court correctly denied Beltran's request for a sudden passion instruction); *Trevino*, 100 S.W.3d at 233, 241 (agreeing with court of appeals that the trial judge erred in denying the defendant a requested sudden passion jury charge).

violated his common law right to allocution.[6]  The State argues Alvarado failed to preserve error on this issue by timely objecting in the trial court.

We agree with the State.  Because Alvarado failed to preserve error on this issue in the trial court, we overrule Alvarado's second issue and do not address whether a common law right to allocution exists in Texas.  *See* TEX. R. APP. P. 33.1(a) (listing prerequisites to presenting a complaint for appellate review); *Hicks v. State*, Nos. 05-20-00614-CR, 05-20-00615-CR, 2021 WL 3042672, at *2 (Tex. App.—Dallas July 19, 2021, no pet.) (mem. op., not designated for publication) ("We have repeatedly held that a defendant who fails to timely object to the denial of his or her right of allocution does not preserve the complaint for appeal."); *Graves v. State*, Nos. 05-19-00786-CR, 05-19-00788-CR, 2021 WL 1558740, at *3 n.1 (Tex. App.—Dallas Apr. 21, 2021, no pet.) (mem. op., not designated for publication) (overruling same issue when appellant failed to preserve error and without considering whether a common law right to allocution exists);[7] *see also Delesma v. State*, No. 05-22-00792-CR, 2023 WL 4286032, at *1 (Tex. App.—

---

[6] "Allocution" refers to a trial judge providing a criminal defendant the opportunity to "present his personal plea to the Court in mitigation of punishment before sentence is imposed."  *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (op. on reh'g).  A statutory right to allocution—which Alvarado concedes was satisfied here—requires that the defendant be asked, before sentence is pronounced, "whether he has anything to say why the sentence should not be pronounced against him."  TEX. CODE CRIM. PROC. art. 42.07.

[7] In *Graves*, 2021 WL 1558740, at *3 n.1, we cited *Decker v. State*, No. 15-18-01259-CR, 2020 WL 614100, at *4 (Tex. App.—Dallas Feb. 10, 2020, no pet.) (mem. op., not designated for publication) as a resource for a discussion on the history of allocution rights in Texas.  *Decker* stated, "Following the enactment of code of criminal procedure article 42.07, the questions of whether the statute encompassed the same scope as the former common-law practice, or, if not, supplanted any potential broader reach of the common-law right remained unanswered."  *Decker*, 2020 WL 614100, at *4.

Dallas June 30, 2023, no pet. h.) (mem. op., not designated for publication) (overruling same issue based on failure to preserve error); *Loring v. State*, No. 05-18-00421-CR, 2019 WL 3282962, at \*5 (Tex. App.—Dallas July 22, 2019, no pet.) (mem. op., not designated for publication) (same).

### III. CONCLUSION

We affirm the trial court's judgment.

/Ken Molberg/
KEN MOLBERG
JUSTICE

211026f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

RUBEN ALVARADO, Appellant

No. 05-21-01026-CR　　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas Trial Court Cause No. F19-75993-N. Opinion delivered by Justice Molberg. Justices Partida-Kipness and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of July, 2023.