

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-01003-CR

Jeremiah Jordan **BROWN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 22-03-14361-CR
Honorable Daniel J. Kindred, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:     Irene Rios, Justice
             Lori I. Valenzuela, Justice
             Velia J. Meza, Justice

Delivered and Filed: April 2, 2025

AFFIRMED

A grand jury indicted appellant Jeremiah Jordan Brown on one count of murder, one count of tampering with physical evidence, and one count of unauthorized use of a motor vehicle. Following a trial on the merits, the jury found Brown guilty on all three counts and assessed punishment at thirty years' confinement. In four appellate issues, that we construe as three, Brown argues: (1) the trial court erred by denying him the opportunity to call a specific witness at his motion for new trial hearing; (2) the trial court erred by applying the rules of evidence in a

suppression hearing; and (3) the evidence is legally and factually insufficient to reject his sudden passion claim. We affirm.

## BACKGROUND

Before the events at the center of Brown's trial, Brown had reconnected with his sister, Alexis Cunningham. Cunningham was in a romantic relationship with Elijah Chandler, and the couple had a child together. When Cunningham and Chandler's relationship started to fall apart, Cunningham began seeing Troy Viana.

On February 5, 2022, Cunningham was at Viana's house watching TV. Unhappy with the circumstances, Chandler tracked Cunningham and drove to Viana's house. Brown accompanied Chandler. When Chandler and Brown arrived and saw Cunningham's car, the pair exited Chandler's car and deflated Cunningham's passenger rear-side tire. Around this time, Cunningham and Viana exited the house and saw Chandler and Brown near Cunningham's car. Chandler and Brown returned to Chandler's car and left.

Close to midnight, Cunningham and Viana drove to a nearby gas station on the east side of San Antonio to inflate Cunningham's tire. As Viana inflated the tire, Chandler, with Brown still as a passenger, drove into the gas station parking lot. After Cunningham rejected Chandler's requests to walk over to talk with him, Chandler rolled down his window and began shooting at Viana—striking him. Chandler and Brown quickly drove away.

As February 5 turned to February 6, 2022, Chandler and Brown drove towards Castroville. The pair found a wooded area and navigated Chandler's car down the long entrance to find a place to bury the gun used by Chandler to shoot Viana. Although the manner in which what happened next is disputed, it is undisputed that Chandler's life ended with seven gunshots to the head—three of which would have been individually fatal. Brown left Chandler's body and drove Chandler's

car to a gas station, where he was picked up and taken home. Chandler's body was found by a hiker in the morning hours.

Brown was indicted for Chandler's murder, tampering with physical evidence, and unauthorized use of a motor vehicle. Brown's trial began on August 7, 2023. The State's principal witness was Texas Ranger Chad Matlock. Matlock testified to how he became involved in the case and to his investigation, including learning that Brown was present when Chandler shot Viana in San Antonio the night before. The jury was shown a video recording of Matlock interviewing Brown. In the video, Brown initially stated he was just present at Viana's house; however, Brown later confessed to helping Chandler deflate Cunningham's tire and that he killed Chandler in the early hours of the following day.

Through the testimony of Matlock, the jury was also shown a video recording in which Brown and Matlock were in Castroville at the location where Chandler's body was found. During the video, Brown alleges that when he began digging a hole with a rock to bury the gun used to shoot Viana, Chandler discharged the gun to scare him, pointed the gun at him, and told him that if he did not say anything, he would not hurt him. Brown further stated in the video that he then grabbed Chandler's right arm to get the gun, Chandler reacted by swinging his left hand at Brown, but Brown was still able to wrestle the gun away. Brown contended that as he began to walk backward with the gun, Chandler came towards him, so he fired two shots at Chandler, hitting him in the chest. After he shot Chandler, Brown claimed he ran to Chandler's car and drove off. Brown further expressed in the video that he called his mother, Shelica Alvirez, to have her pick him up and told her he had left Chandler at a gas station. On direct examination, Matlock testified: Brown's version of events was inconsistent with the way Chandler's body was found and the lack of injury to Brown; that before they had gone to the crime scene, Brown had not made any

statements to him regarding Chandler discharging a gun in Castroville; and Chandler did not use deadly force towards Brown, but that Brown used deadly force towards Chandler.

On cross-examination, Matlock testified that he did not investigate the shooting at the gas station in San Antonio and left that investigation, if any, to the San Antonio Police Department. Matlock also told the jury that by looking at the contents of Cunningham's cell phone, he determined that some domestic violence may have occurred between her and Chandler and that Cunningham's new relationship with Viana was the catalyst for the gas station shooting.

The State's next witness was Cunningham. She testified: that Brown and Alvirez moved in with her and Chandler after she became pregnant; that Chandler put his "hands on her" once or twice during their relationship; that Chandler previously threatened to kill their baby several times, including threatening to crash the car when she and the baby were riding with him; and that the night before the gas station shooting, Chandler had choked her during a fight. Regarding the events of February 5, 2022, Cunningham told the jury that she saw Chandler and Brown near her car when she exited Viana's house, that she noticed something wrong with her backside passenger tire, and that she and Viana drove to a nearby gas station to inflate the tire. Cunningham stated that when they arrived at the gas station, Viana exited the car and began fixing the tire. At that point, Chandler and Brown pulled into the gas station, and Chandler kept trying to get Cunningham to exit her car and talk to him. During this time, Cunningham explained to the jury that Chandler moved within about five feet of her and Viana. When Cunningham again told Chandler she would not walk over to speak with him, Chandler shot at Viana, striking him three times. After he fired the shots, Chandler and Brown drove off. Cunningham testified she tried to get a hold of Chandler that night but did not hear from him or Brown. When she finally spoke to Brown the next day, Cunningham stated Brown acted normal and said nothing about Chandler.

The State's final witness was forensic pathologist Dr. Suzanna Danna. Danna testified that three of the seven bullets fired by Brown that struck Chandler were considered lethal and that the defense theory that Chandler was advancing towards Brown when the shots were fired was not credible.

During Brown's case in chief, he called forensic expert Scott Broderhausen, who examined data extracted from Chandler and Brown's cell phones. Broderhausen testified that although he did not find evidence of threats made by Chandler towards Brown, he did find text messages sent from Brown to Cunningham around the time of the murder in which Brown alleged he was being held hostage by Chandler and that Chandler had threatened to kill him. The defense also called Brown's great aunt, Mertha Dorsey, who testified that she regularly took care of Brown when Alvirez went to rehab and that she witnessed Chandler's aggression and verbal abuse directed at Cunningham.

The defense next called Alvirez, who began by testifying that Brown was the youngest of her five children, all of whom had been removed from her care at one time or another by Child Protective Services. After briefly discussing the ages of her children, her living situation during the past few years, and that Brown was currently on probation—a fact that was not supposed to be disclosed to the jury during the guilt-innocence phase of the trial—Brown's trial counsel requested a bench conference, prompting the following discussion:

| | |
|---|---|
| Trial Counsel: | I believe [Alvirez is] either drunk or she high. I have a [sic] quite a few things I wanted to discuss with her but she doesn't even — and I talked to her several times. |
| Trial Court: | Bottom line is, what do you want to do? |
| Trial Counsel: | We have another witness we can call today. We can recall her tomorrow morning. |
| Trial Court: | I'll leave that up to you. |

| | |
|---|---|
| State: | We have no problem with that. Tomorrow? |
| Trial Counsel: | Yeah, have her start first thing in the morning. |

. . . .

| | |
|---|---|
| Trial Court: | . . . [Y]ou can ask more questions if you want or release her and call her back tomorrow. |
| State: | I'm okay excusing her if we are not going to talk about why she left. |

. . . . .

| | |
|---|---|
| Trial Court: | Do you want to get anything on the record about Ms. Alvirez? |
| Trial Counsel: | I think that's the best. |
| Trial Court: | All right. The jury is not present in the courtroom. Ms. Alvirez was under direct examination and the defense has indicated they would like to terminate their direct examination of her at this time in an attempt to recall her or recall her possibly tomorrow. Is that accurate? |
| Trial Counsel: | Yes, Judge. I think we are just not going to recall her. I just feel like we are going to end up in the same situation. |
| Trial Court: | Okay. Well, the option is there if you want it. State, do you have any objection? I mean she's gone. |
| State: | Right. |
| Trial Court: | So you are not going to object to that. |
| State: | No. |
| Trial Court: | But I will allow them to try and recall her if they think it's appropriate. |
| State: | Yes, based on what's transpired here I can't in good faith object to any of that. |
| Trial Court: | All right. Is there anything else either party wishes to get on the record about that particular witness? |
| Trial Counsel: | No, Judge. |

. . . . .

State:          . . . I did have one matter I wanted to discuss, [Alvirez]. The defense hasn't told me yet whether they are going to recall her. If she is not recalled, I would ask that her testimony be stricken and that there be an instruction to disregard her testimony in its entirety. I don't want the defense to refer in closing to, "Look at how [Alvirez] was," as though it's substantive evidence.

Trial Court:    Is there any objection to that because she was kind of — never got — kind of a false start.

. . . .

Trial Counsel:  We told her to come back tomorrow. I don't know if she's going to come back or not because I don't know what her condition is going to be. I guess we can take it up in the morning.

Trial Court:    All right. But I do think that if she's not going to re-testify and give it a second go, we'll have her — tell the jury to disregard her testimony because, I mean, she just never got off past go. Poor thing. Okay.

Trial counsel chose not to recall Alvirez the following morning, and the trial court struck her testimony. Following closing arguments, the jury found Brown guilty on all three counts. Brown elected to have his punishment determined by the jury.

During the trial's punishment phase, the defense called two witnesses—psychologist Dr. John Delatorre and counselor Margaret Bassett. Delatorre generally testified that Brown was born addicted to drugs, there was physical violence in the home he grew up in, and that Brown was in and out of foster care. Delatorre also explained that Brown exhibits protective traits and is in desperate need of social approval, but was immature, could be angered easily, and had previously been arrested for family violence. Addressing the specific events at issue, Delatorre told the jury that, although passion generally dissipates with the passage of time, witnessing the gas station shooting and riding with Chandler in the car to Castroville created a traumatic event that could have caused a passionate response and that the same passion could have spiked again when Brown and Chandler were searching for a spot to bury the gun. Delatorre ultimately opined to the jury

that Brown killed Chandler in the heat of passion. Similarly, Bassett testified that the relationship between Chandler and Cunningham was abusive and that, although she did not personally interview Brown, it was her opinion that there was no appropriate time for Brown to cool off between the gas station shooting and the murder of Chandler.

After hearing closing arguments, the jury rejected Brown's claim of sudden passion. The jury sentenced Brown to the following: thirty years for murder; ten years for tampering with physical evidence; and two years for unauthorized use of a motor vehicle. All three sentences run concurrently.

Following the jury's punishment verdict, Brown filed a motion for new trial arguing, in part, that Alvirez was kept from testifying and that "a hearing was needed to deduce what Alvirez's testimony would have been" had trial counsel recalled her during the trial's guilt-innocence phase. After holding a hearing, the trial court denied Brown's motion for new trial. Brown now appeals.

## DISCUSSION

In four appellate issues, that we review as three, Brown argues: (1) the trial court erred by refusing to allow Alvirez to testify during the motion for new trial hearing; (2) the trial court erred by applying the Texas Rules of Evidence during a hearing on his motion to suppress; and (3) the evidence is legally and factually insufficient to support the jury's rejection of his sudden passion claim. We address each issue in turn.

## MOTION FOR NEW TRIAL

### *Standard of Review*

We review a trial court's ruling on a motion for new trial using an abuse-of-discretion standard of review. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling, and we will uphold the trial court's

ruling if it was within the zone of reasonable disagreement. *Id*. "An abuse of discretion occurs only if the trial court's determination lies outside the zone of reasonable disagreement." *Barnett v. State*, 513 S.W.3d 596, 599 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We will not substitute our judgment for that of the trial court; instead, we decide whether the trial court's decision was arbitrary or unreasonable. *Webb*, 232 S.W.3d at 112. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

*Applicable Law and Analysis*

During the hearing on Brown's motion for new trial, he attempted to call Alvirez to the stand to testify to, he represents, what she would have stated on the stand had she been recalled that following day during the guilt-innocence phase of the trial. This sparked the following exchange during the new trial hearing:

| | |
|---|---|
| Trial Court: | Okay. What's [sic] the witness? |
| Trial Counsel: | It's Ms. Shelica Alvirez. |
| Trial Court: | What's her testimony going to revolve around? |
| Trial Counsel: | Her testimony will essentially revolve around — because I'm sure the Court's read our motion for new trial but it's essentially weight of the evidence and then that she did not testify and we are just kind of keeping all options on the table, Your Honor. So we are exploring what her testimony would have been. |
| Trial Court: | I don't know if [Alvirez's testimony is] proper here because she was a witness y'all chose not to recall. |
| Trial Counsel: | Correct. |
| Trial Court: | Yeah. |
| Trial Counsel: | And without having the Court's record in front of me as to exactly what was said, we are not insinuating that she was kept improperly by the Court or the State from doing so. We are exploring her |

testimony as it would relate to a motion – possible ineffective assistance of counsel claim.

Trial Court: I don't think this is the proper vehicle for that in a motion for new trial. What a witness may have said if you had put them on the stand, I don't think it falls under one of the grounds. It certainly doesn't and I can consider things outside the rule but you are going to have to sell me on why that's something that I should consider what she may have said if you would have put her on the stand which you chose not to do. . . . [W]e don't know what she would have said. I mean, what she would say in here today is purely what she says today and cannot be reached back and say that's what she would have said. Because she did testify and she didn't testify well, and by the defense's request she was asked to be excused with the option to recall, which I said, "that's fine." And the next day I said, "Are you going to recall your witness?" And they said, "No, we decided not to." I don't know if that's on the record but I do remember the conversation in court.

Trial Counsel: Yeah and we concede. I'm not intimating she was improperly kept against defense's request or anything of that nature. I guess our ground for the testimony, our assertion would be that it's under Rule 21.3(e) [quotes Rule]. I guess the basis for the hearing would be then, Your Honor, that it was intentionally withheld, whether negligently — I won't say maliciously — but by trial counsel as it would possibly relate to being helpful to [Brown's] defense.

Trial Court: I don't think that it's – I mean, again, it's purely conjecture what she may have said if you had decided to put her on the stand, which there was a trial strategic decision to not do that.

. . .

Trial Counsel: . . . That testimony could have been helpful or material to [Brown's] defense or if she was, you know, intentionally kept from testifying under Rule 21.3 of the Texas Appellate Procedure. That would be our basis for this motion for new trial today, Your Honor.

Trial Court: It was never brought to the Court's attention during the trial that she was sought after and could not be located. I was simply told that the defense had decided not to recall her at trial. So there is no — there was no issue brought up about we can't find [Alvirez] or we don't know where she's at, we need her. It was just we don't want her. We are not going to call her. So I don't see how there could be an issue of her being kept from testifying when it appears there was no effort to call her as a witness to demonstrate she's not available for trial.

The trial court denied Brown's request to call Alvirez as a witness during the hearing and denied Brown's motion for new trial. On appeal, Brown posits the trial court's error prevented him from creating a sufficient record to argue on appeal that his trial counsel was ineffective for failing to recall Alvirez during trial.

At the outset, the State argues Brown failed to preserve this issue for appellate review because his trial counsel did not make an offer of proof or bill of exception preserving the substance of Alvirez's testimony when the defense chose not to recall her. *See Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999) ("Absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is presented for [appellate] review."). The State's argument may have been persuasive if, for example, Brown's appellate argument revolved around whether the trial court erred in excluding Alvirez's testimony during trial. *See id.* However, because Brown pinpoints a different issue on appeal—whether the trial court's failure to allow him to include Alvirez's testimony in the motion for new trial record prevented him from creating a sufficient record to assert an ineffective assistance of trial counsel claim on appeal—we are unpersuaded by the State's preservation argument and proceed to the merits of the issue.

As forewarned in the hearing, Brown moved for a new trial on the legal basis that a material witness—Alvirez—was kept from testifying. *See* TEX. R. APP. P. 21.3(e). Rule 21.3(e) provides that a "defendant must be granted a new trial, or a new trial on punishment . . . when a material defense witness has been kept from court by force, threats, or fraud[.]" *Id.* "It is incumbent upon a defendant relying on [Rule 21.3(e)] to show that acts or omissions constituting fraud prevented the missing witness from appearing in court." *Rodriguez v. State*, 21 S.W.3d 562, 567 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The Rule's purpose is to apply in cases where a witness was

deceived, tricked, or otherwise defrauded—not in cases where a witness chooses not to appear. *See id.*

Attached to Brown's new trial motion was an affidavit from Brown's trial counsel—Karli Kennell. Kennell stated that she met with Alvirez before trial and that Alvirez gave her "quite a bit of information that would have been very useful had she been able to testify during trial; however, when [Alvirez] appeared in court to testify, she was so intoxicated that we had to release her as a witness." Kennell explained the nature of Alvirez's behavior while on the stand during trial, that the trial court released Alvirez for the day, and that the trial court would allow Brown to recall Alvirez the following day if desired. Kennell then listed twenty-two pieces of information that Kennell alleges she learned in her interviews with Alvirez that would have been useful in Brown's defense.

Even taking Kennell's representations in the affidavit as true, Kennell does not allege nor represent that Alvirez's testimony—had she been recalled during trial—would have included one, some, or all of the alleged pieces of information Kennell learned in her interviews with Alvirez. Likewise, a point Brown's trial counsel conceded during the hearing, there are no allegations in Brown's motion or Kennell's affidavit that the trial court or the State kept Alvirez from testifying by force, threats, or fraud. Accordingly, under these facts and the standard by which we are to review a trial court's ruling on a motion for a new trial, we hold the trial court did not proceed outside the limits of its discretion by denying Brown the ability to call Alvirez to testify during the motion for new trial hearing. *Webb*, 232 S.W.3d at 112. We overrule Brown's first issue.

**SUPPRESSION**

*Standard of Review*

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). "We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id.* "We review de novo a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor." *Id*. "The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it." *Id.* at 58. "When the trial court does not make explicit findings of fact, the appellate court infers the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied fact findings." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). "Thus, we afford almost total deference to a trial judge's determination of the historical facts that the record supports, especially when his implicit factfinding is based on an evaluation of credibility and demeanor." *Id.*

*Applicable Law and Analysis*

Brown filed a motion to suppress evidence related to a February 8, 2022, search warrant seeking information from his cell phone on the night of Chandler's murder. In response, the State stipulated that it would not use any information acquired from the February 8, 2022 search warrant in Brown's case. On April 10, 2023, the State obtained a second search warrant for Brown's cell phone. Brown responded by filing a second motion to suppress, attacking the April 10, 2023 search warrant.

The trial court held a hearing on Brown's second motion to suppress. During the hearing, Brown's counsel questioned the April 10, 2023 search warrant affiant, Matlock, regarding the nature and contents of the warrant. Relevant to Brown's second appellate issue, the following exchange occurred:

| | |
|---|---|
| Trial Counsel: | Okay, and then on April 10th I believe, correct me if I'm wrong, April 10th, 2023, you authored a new warrant for the same cell phone. Right? |
| Matlock: | Yes, sir. |
| Trial Counsel: | And you and [the State] discussed that, didn't you? |
| Matlock: | Correct. |
| Trial Counsel: | What did y'all talk about for that? |
| State: | I'm going to object to hearsay. |
| Trial Counsel: | Judge, the Rules of Evidence don't apply to a pretrial hearing like this. |
| State: | That's incorrect. It's a motion to suppress. The Rules of Evidence plainly apply. |
| Trial Court: | They do. Okay. I'll — if you're attacking the voracity [sic] of what he said — is that what you're doing? |
| Trial Counsel: | No, Your Honor. I'm just asking what was being said. |
| Trial Court: | Look. It is — it is hearsay and I'm going to sustain it. |

We agree with Brown that a trial court presiding over a hearing on a motion to suppress "is not bound by the rules of evidence in resolving questions of admissibility of evidence, regardless of whether those questions are determined in a pre-trial hearing or at some time during trial." *Ford v. State*, 305 S.W.3d 530, 535 (Tex. Crim. App. 2009); *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd) ("With the exception of privileges, the Rules of Evidence do not apply to suppression hearings because they involve the determination of preliminary

questions."). The trial court erred when it mistakenly applied the Texas Rules of Evidence during the motion to suppress hearing by sustaining the State's hearsay objection.

Nevertheless, we are unable to determine whether the trial court's error harmed Brown because he failed to properly preserve Matlock's testimony regarding the substance of his conversation with the State prior to drafting the April 10, 2023 search warrant for appellate review. *See* TEX. R. EVID. 103(c); *Granados v. State*, 85 S.W.3d 217, 227–230 (Tex. Crim. App. 2002). Accordingly, we overrule Brown's second issue.

### SUFFICIENCY OF THE EVIDENCE — SUDDEN PASSION

*Standard of Review*

Where the State bears the burden to prove elements of an offense beyond a reasonable doubt, we may only conduct a legal sufficiency review. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"). On the other hand, on an issue in which the defendant-appellant bore the burden at trial, such as when pursuing a claim of sudden passion, an appellate court may additionally review the factual sufficiency of the evidence rejecting such claim. *Smith v. State*, 355 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("We review issues on which the defendant had the burden of proof by a preponderance of the evidence, like sudden passion, under a different standard and apply the legal sufficiency standard utilized in civil cases.").

When reviewing the legal sufficiency, we apply the two-prong analysis under the civil legal sufficiency standard. *Matlock v. State*, 392 S.W.3d 662, 668 (Tex. Crim. App. 2013); *Moncivais*,

425 S.W.3d at 407. "First, we review the record for any evidence that supports the jury's negative finding while ignoring all evidence to the contrary." *Rankin v. State*, 617 S.W.3d 169, 185 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). "Second, if no evidence supports the negative finding, then we examine the entire record to determine whether the evidence establishes the affirmative defense." *Id.* A defendant bears the burden of proving sudden passion by a preponderance of the evidence. *Moncivais*, 425 S.W.3d at 407; *see also Gaona v. State*, 498 S.W.3d 706, 710 (Tex. App.—Dallas 2016, pet. ref'd) ("Although the issue of sudden passion is a punishment issue, it is analogous to an affirmative defense because the defendant has the burden of proof by a preponderance of the evidence."). "We must defer to the fact finder's determination of the weight and credibility to give the testimony and the evidence at trial." *Rankin*, 617 S.W.3d at 185.

"In the factual-sufficiency review of a rejected affirmative defense, an appellate court views the entirety of the evidence in a neutral light, but it may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Matlock*, 392 S.W.3d at 671; *Gaona*, 498 S.W.3d at 710. "Therefore, an appellate court may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Matlock*, 392 S.W.3d at 671. "If an appellate court conducting a factual-sufficiency review finds that the evidence supporting the affirmative defense so greatly outweighs the State's contrary evidence that the verdict is manifestly unjust, then the appellate court may reverse the trial court's judgment and remand the case for a new trial." *Id.* at 672.

Under both our legal and factual sufficiency review of the evidence, we review the record as a whole and adhere to the principle that "[t]he jury is the sole judge of the credibility of the witnesses and is free to accept or reject some, all, or none of the evidence presented by either side." *Herrera v. State*, 513 S.W.3d 223, 228 (Tex. App.—San Antonio 2016, no pet.).

*Applicable Law*

A person commits the offense of murder if the person intentionally or knowingly causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). The jury convicted Brown of murder, which is a first-degree felony. *See id.* § 19.02(c).

"At the punishment stage of a murder trial, a defendant may reduce a murder charge from a first-degree felony to a second-degree felony by proving by a preponderance of the evidence that [he] 'caused the death under the immediate influence of sudden passion arising from an adequate cause.'" *Rankin*, 617 S.W.3d at 184 (quoting TEX. PENAL CODE § 19.02(d)). "'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE § 19.02(a)(2); *Herrera*, 513 S.W.3d at 228 ("Sudden passion requires the circumstances be such as to give rise to an immediate influence of sudden passion.") (internal quotation marks omitted); *see also Swearingen v. State*, 270 S.W.3d 804, 820 (Tex. App.—Austin 2008, pet. ref'd) ("The core concept is that a person's mental state has rendered him incapable of rational thought and collected action."). "'Adequate cause' means

- 17 -

cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE § 19.02(a)(1); *Moncivais*, 425 S.W.3d at 407 ("A defendant must prove that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool."); *see, e.g.*, *Gaona*, 498 S.W.3d at 711 (concluding there was "some evidence that appellant was not under the immediate influence of sudden passion when he shot" the victim where the victim "demanded to fight appellant and, when he refused, walked away cursing," yet "[a]ppellant immediately got out of his car, went up to [the victim], and shot him seven times"); *Noland v. State*, 264 S.W.3d 144, 150 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("We conclude, viewing the evidence neutrally, that the jury's rejection of appellant's sudden passion issue is not against the great weight and preponderance of the evidence so as to be clearly wrong or manifestly unjust.").

*Analysis*

Brown does not challenge the sufficiency of the evidence supporting his conviction for murder. Instead, Brown argues that he presented sufficient evidence at trial supporting his claim of sudden passion.

In examining the record under the first prong of the legal sufficiency standard, we conclude there is some evidence to support the jury's negative finding on the issue of sudden passion. Brown argues he only shot Chandler after Chandler provoked him by: (1) shooting Viana in close proximity to Cunningham; (2) threatening him when Chandler stated they would not have problems if Brown did not say anything; and (3) discharging a round near Brown right before Brown lunged at Chandler to grab the gun. Brown points to his upbringing and newly found relationship with Cunningham as context for his provocation.

Examining the record in the light most favorable to the jury's verdict, we conclude there is evidence to support the verdict. *See De Leon v. State,* 373 S.W.3d 644, 650 (Tex. App.—San Antonio 2012, pet. ref'd) ("Sudden passion must arise at the time of the offense and cannot result solely from former provocation."); *Smith*, 355 S.W.3d at 149 ("A defendant may not rely on a cause of his own making, such as precipitating a confrontation, to support his argument that he acted out of sudden passion arising from adequate cause."). The jury could have concluded, based on the State's evidence, that Brown was a willing participant in the gas station shooting and disbelieved Brown's version of events before he killed Chandler. *Smith*, 355 S.W.3d at 149. While the jury heard Brown's statements regarding Chandler's alleged threats towards him on the video recording, the jury was free to not take his version of events as true. *Rankin*, 617 S.W.3d at 185. Because there is evidence supporting the jury's negative finding on Brown's assertion of sudden passion, we need not address the second prong of the civil legal sufficiency standard because the second prong only applies in the absence of any evidence to support the jury's finding. *Moncivais*, 425 S.W.3d at 408. Accordingly, reviewing the evidence in the light most favorable to the verdict and deferring to the jury to determine conflicts in the evidence and issues of credibility, we hold the evidence is legally sufficient to support the jury's rejection of Brown's claim of sudden passion.

Turning to our factual sufficiency review, we note that Brown did not testify, and the only direct evidence of Brown's state of mind at the time he shot Chandler was the video interviews with Matlock shown to the jury. In support of his position, Brown devotes much of his briefing to the circumstances surrounding his upbringing and his relationship with Cunningham. However, the statute requires an immediate influence of sudden passion, and the jury heard evidence of a possible cooling-off period for Brown. *See Herrera*, 513 S.W.3d at 228. Nevertheless, Brown argues there was not sufficient time for him personally to experience cool reflection. Again, the

statute bases its standard on that of "a person of ordinary temper," not a person with Brown's temper, characteristics, or similarities. *See* TEX. PENAL CODE § 19.02(a)(1). In sum, Brown's version of the encounters in San Antonio and Castroville did not greatly outweigh the evidence that supports the jury's rejection of Brown's assertion of sudden passion. Accordingly, we hold the evidence is factually sufficient to support the jury's verdict.

We overrule Brown's final issue.

## CONCLUSION

Having overruled Brown's appellate issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH