

# NUMBER 13-24-00017-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOSEPH DALE HARRIS,**                                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                     **Appellee.**

---

## ON APPEAL FROM THE 187TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and West**
**Memorandum Opinion by Justice West**

A jury convicted appellant Joseph Dale Harris of one count of murder and assessed punishment at sixty-eight years imprisonment. *See* TEX. PEN. CODE ANN. § 19.02(b)(1)–(2). The trial court entered a judgment consistent with the jury's findings. By three issues, which we reorder, Harris argues that: (1) the evidence was sufficient to

support appellant's sudden passion special issue; (2) Section 19.02(d) of the Texas Penal Code is facially unconstitutional; and (3) the trial court erred when it denied his motion for continuance. We affirm.[1]

## I.    BACKGROUND

On February 28, 2022, in front of the North American Development Bank building in downtown San Antonio, Harris—a 6'-0", 255-pound male—was at a bus stop with his acquaintance, Jayson Lexion, when Isaiah Orozco—a 5'-3", 125-pound male—walked by and told Harris and Lexion to stop texting him and to stay off his block. A two-to-three-minute argument ensued between Harris and Orozco, and Harris "walked up to [Orozco]" and stated, "Come here. Come here. Come here." Orozco brandished a firearm, pointed it to the ground and stated, "Don't come up on me." Harris backed away from Orozco. And Orozco returned his firearm to his pocket, turned around, and began walking down the sidewalk away from Harris. With Orozco's back facing him, Harris retrieved his firearm from his waistband, ran toward Orozco, and began shooting at him. Orozco fell to the ground, and Harris continued to shoot at him. When Harris approached Orozco's body, he briefly paused and then fired a shot into Orozco's head. In all, Harris fired sixteen bullets at Orozco. Orozco sustained several shots to the back, legs, arms, and hands and two fatal shots to the head. Video surveillance from a public bus stop captured the entire shooting.

A witness who was "about twenty feet" from Harris when he shot Orozco's head testified that Harris was yelling "[c]all 911," but he was "not really anxious." Another

---

[1] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001(a).

witness, an employee with North American Development Bank, testified that he saw the latter part of the shooting through his third floor window and that Harris appeared "collected, calm" and not "nervous, upset." Harris then returned to the bus stop and bumped fists with Lexion. While at the police station, Harris engaged in a phone call with a friend wherein they discussed whether Orozco was still alive, and Harris stated, "it's almost worse when someone survives."

A grand jury returned an indictment charging Harris with the murder of Orozco. The jury found Harris guilty of the offense of murder. Following the verdict, the jury found that appellant did not prove by a preponderance of the evidence that he was under the immediate influence of sudden passion arising from adequate cause when he caused Orozco's death. It assessed punishment at sixty-eight years' imprisonment. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Harris argues that he presented sufficient evidence on his sudden passion special issue and thus the jury improperly rejected it.

### A. Standard of Review and Applicable Law

Related to elements of a criminal offense where the State has the burden of proof beyond a reasonable doubt, we review sufficiency of the evidence under the *Jackson v. Virginia* standard. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). However, related to matters that the defense is required to prove by preponderance of the evidence, such as a sudden passion claim, we apply the civil standards of review for both legal and factual sufficiency of the evidence. *Rankin v. State*, 617 S.W.3d 169, 184–85 (Tex. App.—Houston [1st Dist.] 2020,

3

pet. ref'd); *Gaona v. State*, 498 S.W.3d 706, 710 (Tex. App.—Dallas 2016, pet. ref'd); *see Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013).

At the punishment phase of a murder trial, the defendant may raise whether he caused the death of a person under the immediate influence of sudden passion arising from an adequate cause. *Id*. § 19.02(d); *Beltran v. State*, 472 S.W.3d 283, 293 (Tex. Crim. App. 2015) ("Sudden passion is a mitigating circumstance that is relevant to determining the appropriate punishment of a defendant."). If the defendant proves this issue "in the affirmative by a preponderance of the evidence," the offense is reduced from a first-degree felony to a second-degree felony. TEX. PENAL CODE ANN. § 19.02(d).

"Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." *Id*. § 19.02(a)(2). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1). Neither ordinary anger nor fear alone raises an issue of sudden passion. *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Hernandez v. State*, 127 S.W.3d 206, 213–14 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd)). A defendant may not rely on a cause of her own making to support to support a sudden passion defense. *Smith v. State*, 355 S.W.3d 138, 149 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Naasz v. State*, 974 S.W.2d 418, 420 (Tex. App.—Dallas 1998, pet. ref'd)).

A defendant must prove that the killing occurred "while the passion still existed and before there was reasonable opportunity for the passion to cool." *Moncivais*, 425 S.W.3d

4

at 407 (citing *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005)); *see Herrera v. State*, 513 S.W.3d 223, 228 (Tex. App.—San Antonio 2016, no pet.) ("Sudden passion requires the circumstances be such as to give rise to an immediate influence of sudden passion.") (internal quotations omitted). "Anticipation of an event and preparation of a response indicates a defendant had time to deliberate over an action and did not act under the immediate influence of sudden passion." *Moncivais*, 425 S.W.3d at 407. The "core concept" of the sudden passion defense is that "a person's mental state has rendered him incapable of rational thought and collected action." *Swearingen v. State*, 270 S.W.3d 804, 820 (Tex. App.—Austin 2008, pet. ref'd).

Because sudden passion is an issue on which the defendant bears the burden of proof by a preponderance of the evidence, in reviewing the jury's negative finding on this issue, we apply the legal sufficiency standard of review. *Matlock*, 392 S.W.3d at 669. We first examine the record for any evidence that supports the jury's negative finding on sudden passion and ignore all evidence to the contrary. *Id*. If no evidence supports the negative finding, we then examine the entire record to determine whether the evidence establishes the sudden passion issue as a matter of law. *Id*. at 669–70. "If the record reveals evidence supporting the [defense], but that evidence was subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve, we will not consider that evidence in our matter-of-law assessment." *Id*. at 670. The defendant must establish that the evidence "conclusively proves his affirmative defense and 'that no reasonable jury was free to think otherwise.'" *Id*. (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)).

We view the evidence in the light most favorable to the verdict as the jury is the sole judge of weight and credibility of the evidence—after drawing reasonable inferences therefrom—and is free to accept or reject all or any part of the evidence. *Braughton v. State*, 569 S.W.3d 592, 607–08, 612 (Tex. Crim. App. 2018) ("We presume the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution."); *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (providing that a reviewing court must not usurp the jury's role by "substituting its own judgment for that of the jury"); *Brooks*, 323 S.W.3d at 899 (providing that a reviewing court must not sit as "thirteenth juror," disagree with the jury's "weighing of the evidence," or "disagree with a jury's resolution of conflicting evidence")); *Herrera*, 513 S.W.3d at 228 ("[T]he jury is the sole judge of the credibility of the witnesses and is free to accept or reject some, all, or none of the evidence presented by either side."). We determine whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all the evidence. *Braughton*, 569 S.W.3d at 608.

We measure the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Id*. A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024).

**B.    Analysis**

Harris argues that there was sufficient evidence of sudden passion because, he claims, the evidence shows (1) "Orozco was acting erratically, incoherent, and

6

aggressive," (2) Orozco had a firearm, and "Orozco showed [Harris] the firearm while acting incoherently," and (3) "Orozco kept looking back with his hand near his pocket while leaving the scene." However, Harris only cites his or Lexion's testimony for support. As stated, the jury is the sole judge of witness credibility, and the jury was free to reject their testimony. *See Braughton*, 569 S.W.3d at 607–08, 612; *Herrera*, 513 S.W.3d at 228.

Moreover, eyewitness testimony and video evidence demonstrate that Orozco was walking away with his back facing Harris when Harris retrieved his firearm, ran after Orozco, and started shooting at the direction of Orozco. There was also evidence that Harris (1) waited for Orozco to turn around before he started chasing and shooting him, (2) engaged in a brief pause before firing the sixteenth bullet into Orozco's head while standing over him, (3) exhibited a calm and unstressed demeanor, (4) fist-bumped Lexion, and (5) stated to a friend after the shooting that "it's almost worse when somebody survives." Viewing the evidence in the light most favorable to the verdict, we conclude that the jury was free to reject both that (1) Harris was under the immediate influence of sudden passion that arose at the time of an offense and not the result of former provocation and (2) Harris exhibited an ordinary temper overtaken by "anger, rage, resentment or terror" such that he was "incapable of cool reflection." *See Braughton*, 569 S.W.3d at 607; TEX. PEN. CODE ANN. § 19.02(a)(1).[2]

We observe that there was evidence supporting the jury's finding that Harris was not acting under the immediate influence of sudden passion arising from an adequate cause. *See Matlock*, 392 S.W.3d at 669. We also find that the verdict is not so against

---

[2] Harris suggests that we should analyze the sufficiency of his sudden passion defense using the standard of review in federal cases involving excessive use of force by police officers. We decline to do so as such is irrelevant to the sudden passion issue he submitted to the jury and appealed herein.

the great weight and preponderance of the evidence to be manifestly unjust under a factual sufficiency analysis. Thus, a rational juror could have found that Harris failed to prove by a preponderance of the evidence that Orozco's death was caused by Harris's sudden passion, and we accordingly overrule Harris's first issue.

### III.    SECTION 19.02(D) CONSTITUTIONALITY

By his second issue, Harris argues that Section19.02(d) is unconstitutional because it violates the due process clause, which he contends requires that the prosecution "prove beyond a reasonable doubt the absence of the heat of passion provocation when the issue is properly presented." However, Harris conceded in his brief that he failed to raise an objection on this issue in the trial court. Additionally, he provides no citation to a motion or other request made to the trial court on this issue, and we found none during our review of the record. Thus, he failed to preserve error. *See* TEX. R. APP. P. 33.1(a) (preservation requires a timely "request, objection, or motion" in the trial court laying out the grounds for the ruling sought by the complaining party); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding the constitutionality of statutes are issues that may be forfeited by failure to preserve error); *Herrera v. State*, 676 S.W.3d 896, 902 (Tex. App.—Eastland 2023, no pet.) (finding that "[a] complaint that a statute is facially unconstitutional may be forfeited if appellate review is not properly preserved"). And even assuming Harris preserved his issue, our sister courts have consistently rejected Harris's similar issue. *See Herrera*, 676 S.W.3d at 902; *Vasquez v. State*, 2 S.W.3d 355, 361 (Tex. App.—San Antonio 1999, pet. ref'd) (listing several Texas

appellate court cases upholding the constitutionality of § 19.02(d)). Thus, we overrule Harris's second issue.[3]

## IV.  DENIAL OF MOTION FOR CONTINUANCE

By his third issue, Harris argues that the trial court improperly denied his second motion for continuance, wherein he complained (1) an out-of-state witness was unavailable, (2) another witness was unable to be found, (3) he was awaiting access to certain medical records, and (4) he did not have the passcode to certain medical records shared by the prosecution.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Fears v. State*, 479 S.W.3d 315, 325 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (citing *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007)). A motion for a continuance must be in writing, set forth in full the sufficient cause for delay, and be sworn by someone having personal knowledge of the facts relied on for the request. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08. Texas courts have consistently held unsworn motions for continuance fail to preserve appellate review. *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009); *Cruz v. State*, 565 S.W.3d 379, 382 (Tex. App.—San Antonio 2018, no pet.); *see also Goode v. State*, No. 06-24-00172-CR, 2025

---

[3] Texas Government Code § 401.010 serves to "provide the attorney general with the opportunity to be heard on issues important to the laws of the state—the laws the attorney general's office is charged with defending and enforcing." *In re State*, No. 04-14-00282-CV, 2014 WL 2443910, at *2 (Tex. App.—San Antonio May 28, 2014, orig. proceeding) (mem. op.). A Texas court in which a pleading is filed challenging the constitutionality of a Texas statute, must "notify the attorney general of state constitutional challenges." *In re State*, 489 S.W.3d 454, 454 (Tex. 2016) (orig. proceeding) (Willett, J., concurring); *see* TEX. GOV'T CODE ANN. § 402.010. On December 3, 2024, this Court provided notice to the attorney general's office of a constitutional challenge after Harris's brief was complete. We note that the attorney general's office did not file a response with this Court.

WL 1819261, at *2 (Tex. App.—Texarkana July 2, 2025, no pet. h.) (mem. op., not designated for publication); *Foster v. State*, No. 04-22-00149-CR, 2023 WL 4854835, at *2 (Tex. App.—San Antonio July 31, 2023, no pet.) (mem. op., not designated for publication).

Based on our review of the record, we conclude the trial court did not abuse its discretion when it denied Harris's unsworn motion for continuance; thus, his issue is unpreserved for appellate review. *See Blackshear*, 385 S.W.3d at 591. Harris's third issue is overruled.

## V.    CONCLUSION

We affirm the judgment of the trial court.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
6th day of November, 2025.

10